USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 9/17/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
THE TOPPS COMPANY, INC.,

               Plaintiff

    -against-

KOKO'S CONFECTIONARY &
NOVELTY, A DIVISION OF A & A
GLOBAL INDUSTRIES, INC.,

               Defendant.
------------------------------------------------------X

**MEMORANDUM AND ORDER**

16-CV-5954 (GBD)(KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

**PROCEDURAL HISTORY**

By a letter, dated April 20, 2018, plaintiff The Topps Company Inc. ("Topps") requested that the following discovery issues be addressed at a pre-motion conference requested by defendant Koko's Confectionary & Novelty ("Koko's"): (1) "Koko's Customer Communications and Offers for Sale, Including Emails"; (2) "Documents Related To Koko's Manufacturer, Lapeyrouse"; and (3) "Koko's Product Samples." Docket Entry No. 92. Topps asserted it "tried to resolve the issues identified" in its April 20, 2018 letter, "via a series of letters exchanged with counsel for Koko's . . . since March 9, 2018, but Koko's most recent April 17, 2018 response made it clear that the parties are at an impasse and requires the Court's assistance."

The Court conducted a telephonic conference on April 24, 2018 to address the issues raised in the April 13 and 18, 2018 letters by Koko's (Docket Entry Nos. 82 and 88) and the April 19 and 20, 2018 letters by Topps (Docket Entry Nos. 89 and 92). During the April 24, 2018 conference, the Court admonished the parties to be mindful of their obligation, before requesting the Court's assistance, to meet and confer in good faith to attempt to resolve any

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
THE TOPPS COMPANY, INC.,

                      Plaintiff

     -against-

KOKO'S CONFECTIONARY &
NOVELTY, A DIVISION OF A & A
GLOBAL INDUSTRIES, INC.,

                      Defendant.
------------------------------------------------------X

**MEMORANDUM AND ORDER**

16-CV-5954 (GBD)(KNF)



KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## PROCEDURAL HISTORY

By a letter, dated April 20, 2018, plaintiff The Topps Company Inc. ("Topps") requested that the following discovery issues be addressed at a pre-motion conference requested by defendant Koko's Confectionary & Novelty ("Koko's"): (1) "Koko's Customer Communications and Offers for Sale, Including Emails"; (2) "Documents Related To Koko's Manufacturer, Lapeyrouse"; and (3) "Koko's Product Samples." Docket Entry No. 92. Topps asserted it "tried to resolve the issues identified" in its April 20, 2018 letter, "via a series of letters exchanged with counsel for Koko's . . . since March 9, 2018, but Koko's most recent April 17, 2018 response made it clear that the parties are at an impasse and requires the Court's assistance."

The Court conducted a telephonic conference on April 24, 2018 to address the issues raised in the April 13 and 18, 2018 letters by Koko's (Docket Entry Nos. 82 and 88) and the April 19 and 20, 2018 letters by Topps (Docket Entry Nos. 89 and 92). During the April 24, 2018 conference, the Court admonished the parties to be mindful of their obligation, before requesting the Court's assistance, to meet and confer in good faith to attempt to resolve any

1

issues with respect to which either party has a good-faith basis to believe that discovery obligations have not been met.

Topps made a motion for an order compelling Koko's "to produce certain materials previously requested in discovery." Docket Entry No. 104. The Court denied Topps' motion, without prejudice, for failure to comply with the Local Civil Rules of this court. See Docket Entry No. 108. Before the Court is Topps's renewed motion for an order compelling Koko's "to produce certain materials previously requested in discovery." Docket Entry No. 110. Koko's opposes the motion.

## PLAINTIFF'S CONTENTIONS

In the "Introduction" section of its memorandum of law, Topps asserts that, "[w]hen no resolution was reached at the [April 24, 2018] conference, Topps made numerous attempts to resolve these discovery matters without further burdening the Court, but Koko's has continued to refuse to reach any agreement with Topps." In the "Background" section of its memorandum of law, Topps contends that "[b]oth sets of Topps' Requests for Production, along with Koko's responses, are filed herewith as Exhibit 1 to the Declaration of Jean-Paul Ciardullo [("Ciardullo"), Topps' attorney"]. Of these, Topps' discovery requests that pertain to promotional materials, purchase orders, and sales documents for the accused infringing Squeezy Squirt product include at least" Request Nos. 2, 3, 9 and 14. "Topps' discovery requests pertaining to Mr. Lapeyrouse and his companies (the manufacturers of the accused product) include at least" Request Nos. 79, 80, 81, 82, 86, 87 and 88. "Topps' discovery request[] pertaining to the accused product samples" is Request No. 63.

In the "Argument" section of its memorandum of law, Topps asserts that

> Koko's has represented that it has had a long-standing relationship with Paul
> Lapeyrouse and his company, Funtime Candy (collectively "Lapeyrouse"), which

2

developed, manufactures, and supplies the accused infringing Squeezy Squirt candy product. Despite Lapeyrouse's obvious connections to this case, Koko's has refused to produce communications with Lapeyrouse beyond any captured by a "buzzword" keyword search that included terms like "Squeezy Squirt" and "Juicy Drop" (Topps' product) saying that anything not captured by those search terms is irrelevant. However, Koko's use of keywords was never meant to substitute for responding fully to Topps' document requests (Ciardullo Dec. ¶ 7.) Furthermore, Topps also only became aware of the nature of the relationship between Koko's and Lapeyrouse *after* the keyword list was created. (*Id.*) Because of the close and lengthy relationship between Koko's and Lapeyrouse, there are any number of highly relevant communications that the parties might have had without necessarily using the case-specific keywords that Koko's claims to have searched. . . . Topps would expect that the search [of the communications] would be no more complicated than pulling copies of all emails from or to persons at the Lapeyrouse entities, which is something that could be done in a matter of minutes.

With respect to "a complete set of promotional materials and purchase orders," Topps asserts that,

> [a]fter [Koko's] represent[ed] to the Court it essentially completed its discovery efforts, Topps separately identified price sheets and purchase orders that had not been produced. While Koko's has made a partial supplementary production since then, it has failed to explain where the balance of the materials are [sic]. Even as to what was produced, it is heavily redacted, which is improper in view of the Protective Order and the fact that they [sic] documents have already been designated highly confidential. Topps will concede that it need not see confidential purchase order information pertaining to non-Lapeyrouse products, but Koko's should not be permitted to redact the purchase order information showing delivery dates and terms, and the purchase of other Lapeyrouse products. As it stands, essentially everything in the purchase orders has been redacted except for individual line items showing the Squeezy Squirt. In particular, delivery dates and terms might establish the timing and circumstances of acts of infringing offers to sell. A complete set of promotional documents – including all price lists and product order materials – should be produced without the objected-to redactions, and any missing materials accounted for.

With respect to "physical samples of the accused product," Topps asserts that, at the June 6, 2017 hearing on a motion to dismiss, "Koko's provided the Court with a complete sample set of the accused products" and, when "Topps' counsel requested that Koko's similarly provide Topps with a set of its products," . . . "[t]he Court agreed and ordered Koko's to do so." However,

3

Koko's has reneged and violated the Court's order to provide them. Koko's excuse is that its supply of Squeezy Squirts is low, and it thus seeks to force Topps to instead rely on pictures of the accused product, or to make a trip to opposing counsel's offices to briefly look at them, which is prejudicial to Topps. Koko's cannot provide samples to the Court for its inspection and at the same time refuse to provide them to Topps. Nor should Koko's be heard to argue that it lacks the ability to provide the samples. Indeed, Koko's previously represented to the Court that it controls the product in the United States.

Topps contends "it is appropriate to compensate it for the expense of this motion" because Koko's: (i) "course of conduct shows that it does not take its discovery obligations seriously" since it had "not produced (and still has not produced) numerous purchase orders and price sheets"; (ii) "refuses to devote any effort to providing its manufacturer communications that could be so early [sic] collected"; and (iii) "has ignored the District Judge's statement that they should be produced."

In support of its motion, Topps submitted a declaration by its attorney, Ciardullo with: (1) Exhibit 1, "true and correct copies of [Koko's] responses to Topps' Requests for Production, which incorporate therein Topps' Requests"; (1) Exhibit 2, "a true and correct portion of the transcript of the June 6, 2017 hearing in this matter"; and (3) Exhibit 3, "a collection of some of the meet and confer correspondence between the parties concerning the subject matter of the present motion." Ciardullo states that "[c]ounsel also spoke several times by phone and exchanged several emails on these topics." According to Ciardullo,

> [f]ollowing the April 24, 2018 Conference, Topps obtained third party production from several of Koko's customers. These contained price sheets for the accused products, as well as references to purchase orders that had been sent to Koko's. In addition, Koko's past productions included further references to customer purchase orders for the Squeezy Squirt product that had not been produced by Koko's. . . . In response to Topps' letters in Exhibit 3, Koko's ultimately produced a partial collection of Purchase Orders. However, not all of the Purchase Orders identified in Topps' May 2 letter were produced, nor were any other of the Price Sheets produce by Koko's. Koko's also sent a handful of digital photographs of the Squeezy Squirt pop, but maintains that it has no more physical samples that it can provide to Topps. . . . With respect to the Lapeyrouse communications, Topps

4

only became aware of the nature of the relationship between Koko's and Lapeyrouse after Koko's applied its keywords. Furthermore, Koko's use of keywords was never meant to substitute for responding fully to Topps' document requests.

## DEFENDANT'S CONTENTIONS

Koko's asserts that, "[w]hile Topps apparently attempted to correct the various procedural defects of its prior motion, its renewed motion contains the same mischaracterizations and flawed arguments." Koko's contends that "[r]elevance in this case is limited to product at issue – as pled by Topps," and Koko's "fulfilled its obligations with respect to the three categories asserted by Topps in its motion." According to Koko's, "[d]espite claiming that Koko's has not produced 'numerous purchase orders or price sheets . . . ,' Topps has only identified one generic price sheet at issue. However, the actual pricing information on that sheet concerning the Squeezy Squirt Pop was already produced through other documentation, thereby making the production of the price sheet redundant and unnecessary." With respect to Topps' request for "redacted information concerning other products (not at issue in this litigation)," Koko's "should not be required to release from its control, particularly *to a competitor* (or its counsel), sensitive information concerning its transactions with customers that have nothing to do with the case at bar."

Koko's asserts that "Topps has the non-privileged communications with Lapeyrouse related to the product at issue and its *ipse dixit* shows nothing more than that Topps is on an improper fishing expedition." Koko's contends that

> Topps previously asserted that it is seeking communications with Lapeyrouse in relation to "Topps" endeavor to bring the Lapeyrouse Entities into this litigation (Kaufman Decl., Ex. A). That admission demonstrates that the requested information has never been related to the claims asserted against Koko's in this action – even more so now that Topps has withdrawn its motion to amend. Now, Topps is trying to distance itself from that admission by shifting its position and

5

merely fishing for information that *might* exist, without any good faith basis that it actually does exist, let alone that such information would actually be relevant o the claims it asserted in this litigation.

Koko's asserts that "Topps' conjecture or wishful thinking – without any cited evidence directly to support that assertion – about what 'might' (or might not) exist in the hopes that something useful may come up constitutes nothing more than an impermissible fishing expedition." Koko's maintains that "Topps' assertion that burden outweighs relevance is flatly wrong." "Topps claims (without any support) that the production would only take 'a matter of minutes,'" which is "wrong" and Topps failed to "address the proportionality of its request." Although "Topps 'offers' just to take everything without Koko's undertaking any review for privilege or relevance, . . . that is not the standard for producing information."

According to Koko's "[o]f the three colors of Squeezy Squirt Pop (blue, green and red), Topps has its own blue and green version." Since "the Squeezy Squirt Pop was never sold in the United States" limited quantities of it exist. Koko's asserts that "Topps failed to disclose to the Court that Koko's offered to make the red Squeezy Squirt Pop available for inspection, even though that is all Koko's is obligated to do under the rules." Koko's maintains that "nothing in the Court's statement on the record in response to a request made by Topps (made to the Court without context) states otherwise."

In support of its opposition to the motion, Koko's submitted a declaration by its attorney, Alan F. Kaufman, with: (1) Exhibit A, "a true and correct redacted copy of a letter dated April 11, 2018 from Jean-Paul Ciardullo to Alan F. Kaufman in relation to the captioned matter"; and (2) Exhibit B, "a true and correct redacted copy of a letter dated April 17, 2018 from Alan F. Kaufman to Jean-Paul Ciardullo in relation to the captioned matter."

**PLAINTIFF'S REPLY**

Topps asserts that "pricing and information related to sales is highly relevant" because "[n]ot only may patent damages flow from offers for sale under 35 U.S.C. § 271, but if Koko's were to commence sales before trial, Topps' requested discovery would pertain to damages for those sales because it relates to the degree of market competition for assessing lost profits." Moreover, pricing information is "relevant as supporting evidence of infringing offers for sale, and to show the manner in which Koko's competes with (or undercuts) Topps on price, which is directly relevant to damages." Topps asserts it is not certain to what "other documentation" Koko's refers when it contends that pricing information "was already produced through other documentation." "The fact that Topps received a Koko's pricing sheet from a third party only raises serious questions concerning the completeness of Koko's document search that Koko's refuses to allay. . . . Topps learned about the existence of these withheld documents only because they were produced by a third party." Koko's failed to address, in its opposition to the motion, Topps' assertion that "not all of the Purchase Orders identified in Topps' May 2 letter were produced." Concerning "the Lapeyrouse communications," "[t]he keywords do not absolve Koko's of otherwise having to provide responsive documents that do not contain the keywords, or else all of Topps' Requests for Production would be rendered a nullity." According to Topps, "[d]iscussions concerning forthcoming offers to sell or actual sales would obviously be related to liability and willfulness, just as discussion of pricing and sales channels would pertain to loss profit patent damages, particularly if Koko's commences sales before trial." Topps contends that it is not unreasonable to request a full set of Koko's product because "Koko's can readily contact the manufacturer, Paul Lapeyrouse and Funtime (Xiamen) Candy Co. Ltd., to acquire more samples."

## LEGAL STANDARD

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

A party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things; or (2) to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a).

"For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if. . . a party fails to produce documents." Fed. R. Civ. P. 37(a)(3)(B)(iv). "For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). A motion for an order compelling disclosure or discovery

"must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Motions to compel, pursuant to Fed. R. Civ. P. 37, are left to the sound discretion of the court. See United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

## APPLICATION OF LEGAL STANDARD

*Previously Noted Deficiencies*

When the Court denied Topps' previous motion to compel for failure to comply with the Local Civil Rules of this court, the Court noted the motion's deficiencies, namely, failure to: (a) "specify the applicable rules or statutes pursuant to which the motion is brought" in Topps' notice of motion, as required by Local Civil Rule 7.1(a) of this court; (b) set "forth the cases and other authorities relied upon in support of the motion" in Topps' memorandum of law, as required by Local Civil Rule 7.1(a) of this court; (c) include in Topps' motion "[s]upporting affidavits and exhibits thereto containing any factual information and portions of the record for the decision of the motion"; and (d) "set forth verbatim in the motion papers" the pertinent discovery requests and responses, as required by Local Civil Rule 37.1 of this court. Topps' renewed motion to compel still does not comply with Local Civil Rule 7.1(a) of this court because it does not "specify the applicable rules or statutes pursuant to which the motion is brought" in the plaintiff's notice of motion. Topps simply refiled the same notice of motion previously found deficient by the Court, changing only the date of the notice.

Topps' efforts to comply with the remaining noted deficiencies consist of: (1) providing Ciardullo's declaration with Exhibit Nos. 1-3 and making several citations to certain paragraphs from the declaration and Exhibit Nos. 2 and 3; and (2) adding to its memorandum of law (i) a

9

sub-section "The Discovery Requests At Issue" to the "Background" section, (ii) a section "Applicable law under Rule 37" and a sub-section "D. It Is Appropriate To Compensate Topps For The Expense of This Motion" to the "Argument" section. In all other respects, the plaintiff's memorandum of law is almost identical to the one the plaintiff filed in support of its previous deficient motion.

Topps contends in the section "The Discovery Requests At Issue" that "[b]oth sets of Topps Requests for Production, along with Koko's responses, are filed herewith as Exhibit 1 to the Declaration of Jean-Paul Ciardullo." This contention is inconsistent with Ciardullo's declaration in which he states that Exhibit No. 1 contains "true and correct copies of [Koko's] responses to Topps' Requests for Production, which incorporate therein Topps' Requests." Contrary to Topps' contention, Exhibit No. 1 contains, as Ciardullo asserts, only Koko's responses to Topps' productions requests, namely, Topps' first set of production requests, dated October 19, 2017, and Topps second set of production requests, dated March 26, 2018. Topps did not include its first and second set of production requests in the motion papers, including any definitions and instructions, referenced in Koko's responses to Topps' production requests.

Topps failed to identify or reference any document request at issue in the "Argument" section of its memorandum of law. Adding a sub-section "The Discovery Requests At Issue" to the "Background" section of the memorandum of law, without identifying and discussing each request at issue in the memorandum of law, is not sufficient to support any of the arguments put forward by Topps or helpful to the Court's assessment of Topps' arguments. "Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. 'Judges are not like pigs, hunting for truffles buried in' the record."

10

Albrechtsen v. Bd. of Regents of the Univ. of Wis. System, 309 F.3d 433, 436 (7th Cir. 2002) (quoting U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)). Topps failed to correct, in a meaningful manner, previously noted deficiencies.

## *Rule 37 Certification*

Topps' motion does not include, as it must, "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Ciardullo's contentions in his declaration that: (1) "Exhibit 3 is a collection of some of the meet and confer correspondence between the parties concerning the subject matter of the present motion"; and (2) "[c]ounsel also spoke several times by phone and exchanged several emails on these topics" do not satisfy the certification requirement of Rule 37. Copies of the parties' "follow up" letters to each other concerning discovery sought by Topps in the instant motion do not satisfy the requirement that a motion to compel must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

Exhibit No. 3 attached to Ciardullo's declaration contains letters exchanged by the parties, dated March 9, 2018 (from Topps to Koko's), March 26, 2018 (from Koko's to Topps), April 11, 2018 (from Topps to Koko's), April 17, 2018 (from Koko's to Topps), May 2, 2018 (from Topps to Koko's) and May 16, 2018 (from Koko's to Topps). Each of the letters following Topps' March 9, 2018 "follow up to Koko's continuing discovery deficiencies" letter to Koko's indicates that it is a response to and a "follow up" on the previous letter and none of the letters in Exhibit No. 3 refers to any "phone" conversations or "emails" exchanged by the parties, asserted to have occurred on unidentified dates by Ciardullo.

11

Moreover, in its April 20, 2018 letter to the Court, requesting that the issues subject to this motion be included in the April 24, 2018 conference, Topps represented to the Court: "Topps has already tried to resolve the issues identified below out of court via a series of letters exchanged with counsel for [Koko's] since March 9, 2018, but Koko's most recent April 17, 2018 response made it clear that the parties are at an impasse and require the court's assistance." This representation, which did not mention any "phone" conversations or "emails" exchanged between the parties, appears to describe accurately the entirety of the parties' efforts to meet and confer, as indicated by the content of the letters included in Exhibit No. 3 to Ciardullo's declaration. Given that Ciardullo did not identify the dates on which "phone" conversations and exchanges of "emails" between the parties occurred or describe the content of those "phone" conversations and "emails," Topps' April 20, 2018 representation to the Court and the content of the letters contained in Exhibit No. 3 make Ciardullo's assertion that "counsel also spoke several times by phone and exchanged several emails on these topics" incredible.

Except for Topps' May 2, 2018 letter and Koko's May 16, 2018 response, all other letters between the parties contained in Exhibit No. 3 precede the April 24, 2018 conference with the Court. Despite the Court's admonishment, at the April 24, 2018 conference, that the parties meet and confer in good faith to attempt to resolve any remaining discovery issues without the Court's assistance, Topps' entire effort in meeting and conferring after the April 24, 2018 conference appears to consist of the May 2, 2018 letter to Koko's, in which Topps was "following up on some discrete issues first raised in our April 11 Letter, and also discussed at the April 24 discovery conference." Topps' May 2, 2018 letter falls short of a good faith attempt to meet and confer, meaningfully, in an attempt to resolve any remaining issues without making the motion.

12

Moreover, the content of Topps' letters to Koko's does not suggest that Topps was attempting, in good faith, to meet and confer about the discovery issues subject to this motion. For example, in its March 9, 2018 letter to Koko's, Topps stated: "Please advise by March 14, 2018 when Koko's will be producing the Squeezy Squirt Pops to Topps as well as responding to other deficiencies set forth above." In its March 26, 2018 letter, Koko's responded:

> [W]ith regard to the requested sample of the Koko's production at issue, we note that you already have a sample in your possession and had one with you at the June Court conference. While Koko's is not obliged to provide a second copy of things already in your possession, you have been free since June to arrange for its retrieval (as Koko's should not have to bear the cost of producing something already in your possession). Nonetheless, in the interest of good faith, we are enclosing a sample of the Squeezy Squirt Pop.

In its April 11, 2018 "follow up" letter, Topps stated:

> Last, thank you for the sample the Squeezy Squirt Pop. However, we believe there are at least two other flavors offered by Koko's and produced by Lapeyrouse. For convenience, we are happy to arrange for a pick up from your office. Please let us know when the samples are available for pick up.

In the April 17, 2018 response letter, Koko's stated: "As you know, Koko's product never went into full production. Therefore, as previously explained to your colleagues, we do not have a full set of samples to provide. That said, we are happy to make them available for inspection in our offices at a mutually convenient time." In Topps' May 2, 2018 "follow up" letter subsequent to the April 24, 2018 conference, Topps stated: "In Koko's last letter you had indicated Topps could come to Hinshaw's office to pick up a sample set so that Topps will have the same samples that were provided to the Court. Please let us know when we can do this." Topps' May 2, 2018 assertion, that "[i]n Koko's last letter you had indicated Topps could come to Hinshaw's office to pick up a sample set so that Topps will have the same samples that were provided to the Court,"

13

was not made in good faith, since Koko's made no such indication in its "last letter"; rather, Koko's offered to make available for inspection its set of samples.

The Court finds that Topps did not meet and confer with Koko's, in a meaningful manner and in good faith, to attempt to resolve the issues subject to this motion without the Court's assistance, in particular after the April 24, 2018 conference at which the Court admonished the parties to do so. Although denying the instant motion for failure to include the Rule 37 certificate appears to be warranted, to avoid any further waste of judicial and litigants' resources, the Court will address the merits of the motion.

### *"The Lapeyrouse Communications"*

Topps contends that "Koko's has represented that it has a long-standing relationship with Paul Lapeyrouse and his company, Funtime Candy (collectively 'Lapeyrouse'), which developed, manufactures, and supplies the accused Squeeze Squirt candy product," but "[d]espite obvious connections to this case, Koko's has refused to produce communications with Lapeyrouse beyond any captured by a 'buzzword' keyword search that included terms like 'Squeezy Squirt' and 'Juicy Drop' (Topps' product) saying that anything not captured by those search terms is irrelevant." In a section of its argument entitled "The Lapeyrouse Communications Should Be Produced," Topps does not identify any document request pertinent to "The Lapeyrouse Communications." In a sub-section of the "Background" section styled "The Discovery Requests At Issue," Topps contends that its "discovery requests pertaining to Mr. Lapeyrouse and his companies (the manufacturers of the accused product) include at least" Request Nos. 79, 80, 81, 82, 86, 87 and 88. Putting aside Topps' ambiguous use of the phrase "at least," appearing to suggest that more document requests are at issue than Topps identified in "The Discovery Requests At Issue" sub-section of is memorandum of law, the requests that

14

Topps identified in "The Discovery Requests At Issue" sub-section of is memorandum of law seek documents concerning: (a) "communications between Koko's and any of the Lapeyrouse Entities" (Request No. 79); (b) "payments from Koko's to any of the Lapeyrouse Entities" (Request No. 80); (c) "payments from any of the Lapeyrouse Entities to Koko's" (Request No. 81); (d) "agreements between any of the Lapeyrouse Entities and Koko's" (Request No. 82); (e) "any of the Lapeyrouse Entities" (Request No. 86); (f) "the agreement produced as KAA001855-1856" (Request No. 87); and (g) "the 'longstanding business relationship' referenced on KAA001 855-1856" (Request No. 88). None of the above requests pertains, as Topps contends in "The Discovery Requests At Issue," "to Mr. Lapeyrouse and his companies (manufacturers of the accused product)," because none mentions "Mr. Lapeyrouse" or "his companies (the manufacturers of the accused product)."

Request Nos. 79, 80, 81, 82 and 86 seek documents related to "the Lapeyrouse Entities" and no evidence exists defining, explaining or demonstrating what "the Lapeyrouse Entities" means. Request No. 87 seeks documents related to "the agreement produced as KAA0011855-1856" and Request No. 88 seeks documents related to "the 'longstanding business relationship' referenced on KAA001 855-1856." No evidence was submitted by Topps to demonstrate any connection among "Lapeyrouse Entities," "Mr. Lapeyrouse and his companies (the manufacturers of the accused product)," "Paul Lapeyrouse and his company, Funtime Candy (collectively 'Lapeyrouse'),'' and "the agreement produced as KAA00185-1856."

Moreover, no evidence supports Topps' contention that "Koko's has represented that it has a long-standing relationship with Paul Lapeyrouse and his company, Funtime Candy (collectively 'Lapeyrouse'), which developed, manufactures, and supplies the accused infringing Squeezy Squirt candy product." While Topps' contention refers to "Lapeyrouse and his

15

company, Funtime Candy (collectively 'Lapeyrouse')," Topps' document requests reference "the Lapeyrouse Entities," not "Lapeyrouse" and "his company, Funtime Candy (collectively 'Lapeyrouse')." Thus, Topps' use of the term "Lapeyrouse" to refer to "Paul Lapeyrouse and his company, Funtime Candy" in the "Argument" section of Topps' memorandum of law is inconsistent with Topps' contention that its discovery requests pertain to "Mr Lapeyrouse and his companies," suggesting that "Mr. Lapeyrouse," presumably the same person as "Paul Lapeyrouse," has more companies than "Funtime Candy." However, none of Topps' unsupported assertions clarifies the ambiguous term "the Lapeyrouse Entities."

Ciardullo contends in his declaration that "[w]ith respect to the Lapeyrouse communications, Topps only became aware of the nature of the relationship between Koko's and Lapeyrouse after Koko's applied its keywords." However, Ciardullo fails to identify the nature of "the relationship between Koko's and Lapeyrouse." Ciardullo asserts that "Koko's use of keywords was never meant to substitute for responding fully to Topps' document requests," without identifying or explaining who "never meant" that Koko's use of keywords would substitute for responding fully to Topps' document requests or providing any corroborating evidence for his assertion. Topps does not explain what relevance, if any, what any party "meant" has to Topps' document requests at issue, especially given the lack of evidence that Topps: (a) proposed to Koko's any search terms; (b) engaged in a discussion of the search terms; or (c) objected to Koko's search terms after it was informed about them in the Koko's April 17, 2018 letter to Topps.

Since Topps did not identify any request for production in its arguments concerning "The Lapeyrouse Communications," and it provided no evidentiary support for any of its contentions respecting "The Lapeyrouse Communications," the Court finds that Topps failed to establish that

16

Koko's did not satisfy its discovery obligations; thus, compelling Koko's to produce documents, based on Request Nos. 79, 80, 81, 82, 86, 87 and 88, is not warranted.

### *"A Complete Set of Promotional Materials and Purchase Orders"*

Topps contends that "[a] complete set of promotional documents – including all price lists and product order materials should be produced without the objected-to-redactions, and any missing materials accounted for." The "A Complete Set Of Promotional Materials And Purchase Orders Should Be Produced" section of Topps' memorandum of law is identical to the same section of its memorandum of law submitted in support of Topps' previous deficient motion. Although Topps contends in "The Discovery Requests At Issue" sub-section that "discovery requests that pertain to promotional materials, purchase orders, and sales documents for the accused infringing Squeezy Squirt product include at least" Request Nos. 2, 3, 9 and 14, none of these document requests or any other document request is referenced in the "A Complete Set Of Promotional Materials And Purchase Orders Should Be Produced" section of its memorandum of law and Topps makes no citation to any evidence in support of its assertions contained therein. None of the letters contained in Exhibit No. 3 mentions Request Nos. 9 and 14, and the only reference to Request Nos. 2 and 3 is in Topps' March 9, 2018 letter, where Topps asserts that

> Koko's document production remains deficient for the additional reason that it has failed to produce documents relating to its marketing of the accused products. *See* RFP Nos. 2, 3, 23. While [Koko's] represented that Koko's has allegedly never *sold* the Squeezy Squirt Pop, there is evidence that Koko's has taken steps to market the product.

However, Topps failed to make citation to and provide any evidence, including the evidence alleged to exist in Topps' March 9, 2018 letter, to support its demand that "A Complete Set Of Promotional Materials And Purchase Orders Should Be Produced." Moreover, Topps does not make citation to any authority for the proposition that Koko's is prohibited from redacting

17

irrelevant information contained along with the relevant information in any document produced by Koko's. Nor does Topps identify any good-faith basis for believing that the redacted information is relevant. Accordingly, the Court finds that Topps failed to establish that Koko's did not respond to Topps' discovery Request Nos. 2, 3, 9 and 14; thus, compelling Koko's to produce documents, based on Request Nos. 2, 3, 9 and 14, is not warranted.

*"Physical Samples Of The Accused Product"*

Topps asserts that "in June 2017," Koko's "provided the Court with a complete sample set of its products" and the "Court ordered Koko's" to "provide Topps with a set of its products." Topps does not identify any discovery request in its "Physical Sample Of The Accused Product Should Be Produced" argument; however, Request No. 63 seeks "[s]amples of the Infringing Products displayed, promoted, and/or distributed at trade shows."

In its April 11, 2018 letter to Koko's, Topps acknowledged receiving "the sample the [sic] Squeezy Squirt Pop" from Koko's and asserts: "However, we believe there are at least two other flavors." Koko's contends, in its opposition memorandum of law, that "[o]f three colors of Squeezy Squirt Pop (blue, green and red), Topps has its own blue and green versions," without citation to any evidence to support that contention. At the June 6, 2017 hearing on the motion to dismiss, Koko's provided to the assigned district judge "a ring of [five] products" and represented to the court that Koko's allegedly infringing product is made in the following flavors and colors: (1) "Ice Age," which is blue; (2) "Knock-out Punch, which is red"; (3) "Berry Bomb," which is "darker blue"; (4) "Apple Attack," which is green; and (5) "Blue Razz Watermelon Blast," which is blue (Docket Entry No. 110-4, p.114-116). Thus, Koko's contention that only "three colors of Squeezy Squirt Pop (blue, green and red)" exist is contradicted by Koko's June 6, 2017 representation to the court. Koko's provided no evidence

to support its contention, in Koko's April 17, 2018 letter to Topps, that "we do not have a full set of samples to provide." Although Koko's offered "to make the red sample available for inspection," that offer does not satisfy Koko's discovery obligations with respect to other flavors and colors, represented to exist at the June 6, 2017 hearing. Neither Topps nor Koko's identified the flavor and color of the sample Topps acknowledged receiving from Koko's in Topps' April 11, 2018 letter. In light of Koko's June 6, 2017 representation to the court that five flavors and colors of the allegedly infringing product exist and absent evidence that Koko's has no "full set of samples to provide," compelling Koko's to produce to Topps a full set of samples of Koko's allegedly infringing product, as provided to the court on June 6, 2017, is warranted.

***"The Expenses of This Motion"***

In light of the above findings, the Court declines to "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion, Docket Entry No. 110, is denied, in part and granted, in part. On or before September 20, 2018, Koko's shall produce to Topps a full set of samples of its allegedly infringing product.

Dated: New York, New York
September 17, 2018

SO ORDERED:

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE