UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE TOPPS COMPANY, INC.,

                Plaintiff,

    -against-

KOKO'S CONFECTIONERY & NOVELTY, *a Division of A & A Global Industries, Inc.*,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

16 Civ. 5954 (GBD)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: AUG 27 2020

GEORGE B. DANIELS, United States District Judge:

On July 26, 2016, Plaintiff The Topps Company, Inc. ("Topps") brought this action against Defendant Koko's Confectionery & Novelty Inc. ("Koko's"), alleging that Defendant's candy product, Squeezy Squirt Prop ("SSP"), infringes U.S. Patent No. 6,660,316 (the "'316 Patent") and the trade dress of Plaintiff's candy product, Juicy Drop Pop ("JDP"). (*See* Compl., ECF No. 1.) Before this Court are the parties' cross-motions for summary judgment. (*See* Notice of Def.'s Mot. for Summ. J., ECF No. 186; Notice of Pl.'s Mot. for Summ. J. of Infringement under Fed. R. Civ. P. 56(f), ECF No. 197.)[1] Defendant's motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED.

---

[1] On November 25, 2019, Defendant submitted a letter request to strike Plaintiff's motion for summary judgment as untimely and procedurally improper. (*See* Letter dated Nov. 25, 2019, ECF No. 205.) Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a *pleading* . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Here, Defendant's motion to strike Plaintiff's motion for summary judgment is improper because Rule 12(f) permits a court to strike *pleadings* only. Specifically, Rule 7(a) defines pleadings as the complaint, answer, answer to crossclaims and counterclaims, third-party complaint, answer to third-party complaint, and replies when ordered by the court. Indeed, "[m]otions, declarations, and affidavits are not pleadings." *Huelbig v. Aurora Loan Servs., LLC*, No. 10 Civ. 6215(RJH) (THK), 2011 WL 4348281, at *2 (S.D.N.Y. May 18, 2011), *report and recommendation adopted*, No. 10 Civ. 6215 (RJH) (THK), 2011 WL 4348275 (S.D.N.Y. Sept. 16, 2011). Accordingly, Defendant's motion to strike is DENIED given it does not comport with the restrictions of Rule 12(f). *See, e.g., Sierra v. United States*, No. 97 Civ. 9329 (RWS), 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998) (denying plaintiff's motion to strike defendant's motion to dismiss on the basis that a motion to dismiss is not a pleading).

1

## I. FACTUAL & PROCEDURAL HISTORY

On December 9, 2003, U.S. Patent Application No. 10/027,521 matured into the '316 Patent and was assigned to Topps by Daniel Hart and Gary Weiss. (Second Am. Compl. ("SAC"), Ex. G ("'316 Patent"), ECF No. 29-7.) The '316 Patent is described as follows:

> [A] candy product according to the invention comprises a housing having separate chambers for holding a piece of hard candy and a compressible juice bottle containing a flavored liquid. The hard candy is secured to a candy holder which can be placed in the lower chamber of the housing and removed for consumption. The juice bottle is made of a pliable material which is accessible through openings in the housing so that an external squeezing force can be applied to the bottle to dispense liquid droplets onto the candy.

(*Id.* at [57].) Defendant's candy product, SSP, contains a piece of candy and a bottle of liquid in separate compartments. (Pl.'s Resp. and Objs. to Def.'s Statement of Material Facts on Mot. for Summ. J. ("Pl.'s Counter 56.1"), ECF No. 202, at ¶ 9.) On July 26, 2016, Plaintiff commenced this action, alleging that Defendant has willfully infringed, both directly and indirectly, the '316 Patent, in violation of 35 U.S.C. § 271(a)-(b). (SAC, ECF No. 29, at ¶¶ 44–50.) Plaintiff further asserts a trade dress infringement claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). (*Id.* ¶¶ 51–55.)

On November 22, 2016, Koko's moved to dismiss Topps's First Amended Complaint. (Mot. to Dismiss the Am. Compl., ECF No. 18.) This Court granted Koko's first motion to dismiss with leave to amend the complaint, which Topps filed on January 17, 2017. (*See* Mem. Decision and Order, ECF No. 28; SAC.) On February 10, 2017, Koko's filed a second motion to dismiss, which this Court denied. (*See* Mem. Decision and Order, ECF No. 44.)

The parties then filed claim construction statements pursuant to Local Patent Rule 11 on April 16, 2018. (*See* Pl.'s Submission of Claim Terms Chart Pursuant to Loc. Pat. R. 11, ECF No. 83; Def.'s Submission of Claim Terms Chart Pursuant to Loc. Pat. R. 11, ECF No. 84.)

2

This Court held a claims construction hearing under *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) (the "*Markman* hearing") to determine the proper construction of the disputed claim language in the '316 Patent. Although the '316 Patent is comprised of six claims, the parties asked this Court to construe, *inter alia*, two parts of Claim 1. In its June 12, 2019 *Markman* ruling, as relevant here,[2] this Court construed the disputed terms of Claim 1 as follows:

> Claim 1, Part 1: "a housing defining an upper chamber and a lower chamber" is construed to mean "*a housing with two compartments, where one compartment is above the other.*"
>
> Claim 1, Part 2: "a candy holder for supporting a piece of candy and including a handle at its lower end, said candy being receivable within said lower chamber to close the chamber" is construed to mean "*a structure with a handle at its bottom that holds a piece of candy*, said candy being receivable within the lower chamber to close the chamber."

(Mem. Decision and Order ("*Markman* Order"), ECF No. 172, at 1 (emphasis in original).); *see also Topps Co., Inc. v. Koko's Confectionery & Novelty*, No. 16 Civ. 5954 (GBD), 2019 WL 2656012, *1 (S.D.N.Y. June 12, 2019).

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

---

[2] This Court's construction of the terms governs its findings in this decision.

3

In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings, *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

4

## III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IS GRANTED.[3]

### 1. Patent Infringement.

Patent infringement analysis involves two steps: "the court first determines, as a matter of law, the correct claim scope, and then compares the properly-construed claim to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or by a substantial equivalent, in the accused device." *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999) (citations omitted). Here, this Court has undergone the first step in the infringement analysis—that is, claim construction. (*See Markman* Order); *see also Topps* 2019 WL 2656012.

Turning to the second step of the infringement analysis, a literal patent infringement case is "amenable to summary judgment" where "the parties do not dispute any relevant facts regarding the accused product but disagree over [claim meaning]." *Athletic Alternatives, Inc. v. Prince Mfg. Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996). To establish literal patent infringement, "every limitation set forth in a claim must be found in an accused product or process." *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990). "It is well settled that an accused device that sometimes, but not always, embodies a claim nonetheless infringes." *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) (cleaned up).

Alternatively, "[u]nder the doctrine of equivalents, a product or process that does not literally infringe a patent claim may nevertheless be held to infringe 'if it performs substantially

---

[3] When a plaintiff moves for summary judgment in a patent infringement case, it "bears the burden of proving infringement by a preponderance of the evidence." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985). In other words, the plaintiff must show that no genuine dispute of material fact exists as to any of the elements of infringement. On the other hand, when a defendant moves for summary judgment of noninfringement, the defendant bears an initial burden that is discharged by proving that there is an absence of evidence to support the plaintiff's patent infringement case. *See Exigent Tech. Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308 (Fed. Cir. 2006). Accordingly, where, as here, after assessing the parties' cross-motions for summary judgment, the court finds for the defendant, it is also concluding that the plaintiff has failed to identify a genuine dispute of material fact as to infringement and that the defendant has proved the absence of a dispute of fact.

5

the same function in substantially the same way to obtain the same result.'" *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1362 (Fed. Cir. 2019) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)). Moreover, the doctrine of equivalents applies only in exceptional cases and is not "simply the second prong of every infringement charge, regularly available to extend protection beyond the scope of the claims." *Id.* Indeed, "the doctrine of equivalents cannot be used to effectively read out a claim limitation . . . because the public has a right to rely on the language of patent claims." *Id.* Therefore, at the second step of patent infringement analysis, the question turns on whether the patented product and the accused product are either literally or functionally identical.

## 2. Literal Infringement.

This Court construed Claim 1, Part 1—"a housing defining an upper chamber and a lower chamber"—to mean "a housing with two compartments, where one compartment is *above* the other." (*Markman* Order at 1 (emphasis added).) This Court explained that the language of the '316 Patent, which "frequently uses directional language to specify the orientation of the product's housing compartments[,] . . . underlines that the definitional orientation of the housing compartments does not change when they are rotated in use, because the housing still 'defines upper and lower chambers.'" (*Id.* at 6.) Indeed, "each chamber has specific functional qualities that depends on its position—the lower chamber has the 'bottom' opening for the candy holder and the upper chamber has the mounted juice bottle [above the shelf]." (*Id.* at 7.)

Defendant contends that SSP does not meet Claim 1, Part 1 because in its "starting position"—that is, "standing upright on its own base"—two chambers are positioned next to each other side by side rather than one chamber being above the other. (Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def. Mem."), ECF No. 189, at 5–6.) Plaintiff argues that the terms "upper"

and "lower" essentially "serve only to spatially arrange the housing's two compartments relative to each other, and the handle relative to the candy holder; they do not specify any frame of reference that fixes either the orientation of the housing or the assembled packaged candy product as a whole." (Corrected Opp'n to Koko's Mot. for Summ. J. of Noninfringement and Request for Summ. J. of Infringement ("Pl. Mem."), ECF No. 210, at 5.) Relying on its expert's declaration, Plaintiff further claims that "the SSP housing compartment holding the bottle is above the compartment holding the hard candy when the housing is held or placed with its longest axis horizontal." (*Id.* at 13–14.)

Plaintiff's argument is foreclosed by the *Markman* Order in which this Court unequivocally held that each chamber has specific functional qualities that are *position-dependent*. (*Markman* Order at 7.) In particular, this Court explicitly rejected Plaintiff's proposed construction of "upper" that would allow flexible orientation between "upper" and "lower" chambers. (*Id.* ("Following Topps' proposed interpretation would contravene *Phillips* by giving the word "upper" different meanings in Claims 1 and 3.")) Here, SSP, designed to stand upright on its base as shown in the picture below, plainly does not have an upper chamber nor a lower chamber:



7

(Decl. of Roger M. Masson, Ex. J (Supp. to Ex. C to Expert Report of Stephen P. McKee), ECF No. 187-10.) Because SSP's two compartments are plainly side-by-side instead of having one compartment above the other, SSP does not meet Claim 1, Part 1.

Turning to Claim 1, Part 2, this Court construed "a candy holder for supporting a piece of candy and including a handle at its lower end" to mean "a structure with a handle at its bottom that holds a piece of candy." (*Markman* Order at 9.) Again, this Court held that the position of the candy holder was critical in construing this term. The specification of the '316 Patent describes the candy holder in the following way: "the bottom of shell is open and receives a candy holder comprising a handle and two upstanding prongs." (*Id.* (cleaned up).) Here, because the handle of the SSP candy holder is at the top of the candy holder rather than the bottom, SSP does not meet Claim 1, Part 2. As such, Defendant is entitled to summary judgment as to literal infringement.

### 3. Infringement Under the Doctrine of Equivalents.

Plaintiff also claims that SSP infringes the '316 Patent under the doctrine of equivalents. Defendant argues that claim vitiation bars application of the doctrine of equivalents. Vitiation is best understood not as "an exception to the doctrine of equivalents, but instead [as] a legal determination that 'the evidence is such that no reasonable jury could determine two elements to be equivalent.'" *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013) (quoting *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012)); *see also Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371 (Fed. Cir. 2015) (defining vitiation as a "legal conclusion of a lack of equivalence based on the evidence presented and the theory of equivalence asserted"). The Federal Circuit has noted that when conducting a vitiation analysis, "[c]ourts should be cautious not to shortcut this inquiry by identifying a 'binary' choice in which an element is either present or 'not present.'" *Deere & Co.*, 703 F.3d at 1356.

Plaintiff's evidence on equivalence was submitted in the form of expert testimony. The expert opines that the only difference between Claim 1, Part 1 in the '316 Patent and SSP is the "relative orientation of the two chambers," that the housing functions to "hold both a piece of hard candy and a flavored liquid within a single structure," and that so long as "two distinct compartments" exist, the orientation "has no bearing on their functions." (Decl. of Matthew Wadalawala ("Wadalawala Decl."), ECF No. 200, at ¶¶ 39, 41, 42.) The expert further states that "side-by-side" essentially performs the same function as "one above the other" given "the two compartments are adjacent to each other." (*Id.* ¶ 43.)

The features Plaintiff's expert highlights disregard the directional claim limitations of the '316 Patent, and in doing so, the expert attempts to reassert the "in at least one orientation" argument already rejected by this Court. Specifically, in the *Markman* Order, this Court found that "each chamber has specific functional qualities that depend on its position"—hence, an *upper* chamber and a *lower* chamber, as laid out in the patent specification. (*Markman* Order at 7.) Indeed, the expert vitiates "upper" and "lower" in the function prong of the doctrine of equivalents by disregarding their special position. Additionally, in opining on the "way" prong, the expert states that SSP operates in the same way as JDP given SSP has "one chamber for holding a piece of hard candy and another chamber for holding a flavored liquid." (Wadalawala Decl. ¶ 43.) The expert again neglects the "way" of upper and lower "where one compartment is above the other," as specified in the *Markman* Order. (*Markman* Order at 1.) As to the "result" prong, without addressing the function of upper and lower chambers, and instead referring to other claim elements, the expert states that largely the same result is attained because SSP has "separate compartments for each of the hard candy and the flavored liquid, so that each can be stored separately within a single housing when not in use." (Wadalawala Decl. ¶ 44.) Here, as discussed *supra*, SSP does

9

not have equivalents of an upper and lower chamber and therefore cannot infringe under the doctrine of equivalents as to Claim 1, Part 1.

With respect to Claim 1, Part 2, the expert states that SSP is:

> insubstantially different from "a structure with a handle at its bottom that holds a piece of candy" as construed by the Court because the only claimed function of the candy holder is "for supporting a piece of candy" and the candy holder still accomplishes that function whether (under Koko's interpretation) the candy holder handle is located at the holder's "side" or "top," or it is located at the bottom of the candy holder.

(*Id.* ¶ 56.) The expert ignores the directional features of the '316 Patent, as found in the *Markman* Order, and opines that SSP performs the same function, way, and result as Claim 1, Part 2 "wherever the handle is located relative to the candy holder." (*Id.* ¶ 59.) Because the '316 Patent used directional terms to define its claim, the limitation of such terms cannot be avoided through the use of the doctrine of equivalents. Accordingly, Plaintiff's doctrine of equivalents as to Claim 1, Part 2 is rejected. Defendant is entitled to summary judgment on the issue of infringement by equivalents.[4]

### 4. Trade Dress Infringement.

Plaintiff asserts that Defendant has infringed on the trade dress of JDP. Section 43(a) of the Lanham Act "gives a [plaintiff] a cause of action for the use by any person of 'any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . .'" *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000) (quoting 15 U.S.C. § 1125(a)). Trade dress includes the

---

[4] Plaintiff further asserts that Defendant infringes Claim 2 of the '316 patent. (Pl. Mem. at 13.) Claim 2 states that "[a] packaged candy product according to claim 1, wherein said housing includes opposed openings and said bottle includes portions extending through said openings." ('316 Patent at 3:6–8.) As Plaintiff's expert claims "claim 2 depends [on] claim 1 and, as such, also includes all of the limitations of claim 1." (Wadalawala Decl. ¶ 83.) Accordingly, SSP does not meet the elements of Claim 2 either literally or under the doctrine of equivalents for the reasons stated above as to Claim 1.

10

product's design and appearance "all elements making up the total visual image by which the product is presented to customers. Thus, trade dress is essentially a product's total image and overall appearance as defined by its overall composition and design, including size, shape, color, texture, and graphics." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995) (cleaned up). Courts "exercise particular caution when extending protection to product designs." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) (citations omitted). This is because "[w]hile most trademarks only create a monopoly in a word, a phrase, or a symbol, 'granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves.'" *Id.* at 115 (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 379–80 (2d Cir. 1997)).

Here, no reasonable jury could find that the trade dresses of JDP and SSP are confusingly similar because the lack of similarity between the two products is overwhelming. To name a few differences, first, in SSP, the nozzle cap and candy handle are adjacent to each other, while the nozzle and the handle in JDP are located on opposite ends. (Def. Mem. at 19.) Second, SSP's nozzle cap has a plastic "geyser" of the liquid candy in the same color as the nozzle cap, whereas JDP lacks an analogous feature and its nozzle and nozzle cap are a different color from that of the rest of the trade dress. (*Id.*) Third, "SSP's nozzle cap and handle are far larger and in different shapes from those of JDP." (*Id.*) Lastly, "SSP's bottle has an oval-shaped compressible portion with concentric ovals; JDP's compressible bottle has a round compressible portion with a swirl design." (*Id.*) Taking these features into account, the overall impression of the two products are dissimilar.[5] As such, summary judgment is granted in favor of Defendant as to Plaintiff's trade

---

[5] Plaintiff also claims that the color of the plastic and labels of JDP is a component of its trade dress. (*See* Pl. Mem. at 21–25.) Defendant contends that "color is aesthetically functional" given each color—that is, red, blue, and green—is indicative of favors, "such as strawberry or cherry (red), blue raspberry (blue), and watermelon or apple (green)." (Def. Mem. at 20–21.) "[T]he use of different colors to indicate different

11

dress infringement claim. *See Nora Beverages, Inc. v. The Perrier Group*, 269 F.3d 114, 125 (2d Cir. 2001) (affirming summary judgment for the defendant where the trade dress of plastic bottles used for packaging spring water because the overall impression of the accused bottle was dissimilar).

## IV. CONCLUSION

Defendant's motion for summary judgment, (ECF No. 186), is GRANTED. Plaintiff's motion for summary judgment, (ECF No. 197), is DENIED. The Clerk of Court is directed to close the motion accordingly.

Dated: August 27, 2020
New York, New York

SO ORDERED.

*[signature]*
GEORGE B. DANIELS
United States District Judge

---

flavors serves a functional purpose and is thus unprotectable." *Car-Freshner Corp. v. D & J Distrib. & Mfg., Inc.*, No. 14 Civ. 391 (PKC), 2015 WL 3385683, at *5 (S.D.N.Y. May 26, 2015) (citing *Dippin' Dots, Inc. v. Forsty Bites Distrib.*, LLC, 369 F.3d 1197, 1203–04 (11th Cir. 2004)); *See also Beech–Nut, Inc. v. Warner–Lambert Co.*, 346 F. Supp. 547, 550 (S.D.N.Y.1972) (noting that breath mint colors corresponding to different flavors are functional). Because color is aesthetically functional, it cannot be an actionable component of JDP's trade dress.